IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION



RECEIVED

ℓℓ/ APR 07 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Jackie Sample,

Plaintiff,

v.

Dr. Nashwa Hasabou, M.D.,

and

Metropolitan Family Services,

Defendants.

1:26-cv-03846
Judge Joan H. Lefkow
Magistrate Judge Jeannice W. Appenteng
RANDOM CAT 2

COMPLAINT FOR MEDICAL NEGLIGENCE, LACK OF INFORMED CONSENT, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, AND CORPORATE NEGLIGENCE

## 1. PARTIES

Plaintiff Jackie Sample is an individual who received medical care from Defendants.

Defendant Dr. Nashwa Hasabou is a licensed physician who provided psychiatric care.

Defendant Metropolitan Family Services is a healthcare provider organization responsible for the supervision, policies, and conduct of its providers.

## 2. JURISDICTION AND VENUE

This action includes Illinois common-law claims for medical malpractice and negligence, lack of informed consent, negligent infliction of emotional distress, and corporate negligence.

Plaintiff references HIPAA, including 45 C.F.R. § 164.524, as part of the factual background concerning access to records and the medical-records timeline, but not as an independent private cause of action for damages.

Supplemental Jurisdiction: This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 as to Plaintiff's federal claim(s), if separately pleaded, and supplemental jurisdiction under 28 U.S.C. § 1367 over the related Illinois malpractice and negligence claims.

Venue is proper in the Northern District of Illinois, Eastern Division, because a substantial part of the events or omissions giving rise to these claims occurred in this District.

Plaintiff acknowledges that claims sounding in healing-art malpractice are subject to 735 ILCS 5/2-622, and Plaintiff will attach the required affidavit and health-professional report, or seek the time permitted by law to do so.


## 3. FACTS

Plaintiff has a longstanding diagnosis of ADHD, previously treated and managed effectively with prescribed stimulant medications, including Vyvanse and Adderall, as confirmed by prior treating physician Dr. Othman Mohammad.

Plaintiff's January 28, 2026 Outpatient Psychiatric Evaluation Note from Metropolitan Family Services, signed by Othman Mohammad, MD, documents longstanding ADHD, chronic stress from divorce proceedings, loss of insurance, inability to access providers, financial difficulty due to her husband taking assets, elevated stress from court dates and medical problems, and continuing access barriers to medication and care.

That January 28, 2026 report further reflects that Plaintiff had a history compatible with ADHD, had previously managed ADHD successfully with treatment and therapy with Vyvance, had no delusions, no suicidal ideation, fair insight and judgment, and a treatment plan that included refilling Ambien and Vyvanse with blood-pressure monitoring and follow-up.

On or about March 18, 2026, Plaintiff was evaluated by Defendant Hasabou by telehealth through Metropolitan Family Services.

In the March 18, 2026 Outpatient Psychiatric Evaluation Note, Defendant Hasabou described Plaintiff as presenting focused almost exclusively on obtaining a Vyvanse increase, framed Plaintiff's reports of retaliation involving judges, the sheriff, and the state's attorney as "highly systematized persecutory delusions," referenced alleged "grandiosity," and stated that no medical records were available from previous providers to confirm diagnosis or longitudinal history.

The March 18, 2026 note further documented hypertension and tachycardia, characterized Plaintiff's insight as limited and judgment as significantly impaired, suggested delusional disorder/persecutory type in the assessment/formulation, discontinued Vyvanse, refused stimulant refills or dose increases, and stated that atypical antipsychotic treatment such as Aripiprazole or Risperidone was clinically indicated.

Plaintiff contends that the March 18, 2026 evaluation directly contradicted the January 28, 2026 evaluation and improperly reframed real-world stressors and reported events as psychiatric symptoms rather than reported circumstances.

Plaintiff contends that despite Plaintiff's documented medical history and established treatment, Defendant Hasabou:

a. Refused to continue Plaintiff's prescribed ADHD medication;

b. Failed to review or verify prior medical records before materially changing treatment;

c. Recommended discontinuation of stimulant medication without a safe transition plan;

d. Proposed treatment with antipsychotic medications, including Risperidone and Aripiprazole.

Plaintiff expressed concerns and offered reasonable alternatives, including:

a. Blood-pressure re-evaluation;

b. Clearance from Plaintiff's primary care physician.

Plaintiff contends these alternatives were refused.

Plaintiff contends she was instructed not to seek evaluation from her primary care physician.

Plaintiff alleges that the treatment change jeopardized continuity of care, undermined her ability to function, and increased her health risks.

## 4. DEVIATION FROM PRIOR MEDICAL BASELINE

Plaintiff alleges that the March 18, 2026 evaluation directly contradicted the prior January 28, 2026 evaluation in several material ways, including:

a. ADHD confirmed versus ADHD dismissed or reframed;

b. No delusions versus "persecutory delusions";

c. Stable on Vyvanse versus Vyvanse discontinued;

d. Functional with treatment versus "profound functional decline" attributed to delusional content.

## 5. PLAINTIFF'S DOCUMENTED COMMUNICATION (VERBATIM PRESERVED)

The following communication was sent by Plaintiff and is incorporated fully:

Re: Request for Medical Records

Hello Josh,

I am writing to formally request a complete copy of my medical records related to my recent visit with Dr. Hasabou. This request includes, but is not limited to, all clinical and non clinical notes, physician observations, diagnostic impressions, treatment plans, medication records, and any amendments or addendums made to my file. This request is made pursuant to my rights under applicable law, including the Health Insurance Portability and Accountability Act (HIPAA).

In addition to this request, I am sharing concerns regarding my experience during this visit to ensure accuracy in my medical record and to address patient safety considerations.

During my appointment, I sought continuation of treatment for an existing and previously managed medical condition, ADHS. However, Dr. Hasabou declined to continue my established treatment regimen and instead recommended initiating a new course of treatment involving Risperidone and Aripiprazole. The initial reasoning provided for this change was related to elevated blood pressure.

In response, I offered several reasonable alternatives in an effort to address this concern while maintaining continuity of care. Specifically, I offered to:

Return the following day for a blood pressure re-evaluation or Obtain clearance from my primary care physician regarding my blood pressure.

Both options were declined. I offered to go right over to my primary care doctor to have my blood pressure evaluated. I was explicitly instructed not to go see my primary care physician.

It is important to note that my current treatment regimen, including Vyvanse and adderall treatment for ADHD, has been established and effective in managing my condition. Despite this, I was advised to discontinue Vyvanse and was instead encouraged to use medications for anxiety, based in part on perceived stress related to ongoing legal matters.

I communicated my reliance on Vyvanse for daily functioning and for managing critical responsibilities, including legal matters. However, my concern was not given consideration or acknowledged. Additionally, I am concerned about the potential adverse effects of abruptly discontinuing this medication without a transition plan.

As a new physician seeing me for the first time, the doctor's interest during this visit appeared to focus on inquiries regarding mental health history and potential anxiety treatment which I don't have, rather than addressing my established diagnosis and ongoing treatment needs for ADHD.

Given that I am currently out of my prescribed Vyvanse medication, the doctor's refusal to acknowledge my concerns or collaborate with me, as the patient, in treatment planning for my care effectively removed my patient autonomy and caused me significant concern. At the conclusion of the visit, I inquired whether Dr. Hasabou would continue treatment for my ADHD. I was informed that she would not prescribe my already established treatment and would instead prescribe other medications, specifically Risperidone and Aripiprazole.

The medications suggested carry known cardiac risks, including QTc prolongation and potential arrhythmias such as Torsades de Pointes. I have a known cardiovascular condition for which I am currently receiving treatment and was stable under my existing medication regimen.

The proposed change in treatment represented a significant shift from attention deficit stimulant medication to antipsychotic medications, despite no reported concerns related to anxiety, mood regulation, or irritability to support such a change, which raises significant concern.

I am submitting this letter to ensure the accuracy and completeness of my medical record and to document concerns related to continuity of care and patient safety. I respectfully request that my full and complete records be provided to me as soon as possible or within the timeframe required by law.

Please also include all documentation and notes, or changes made following this visit.

Thank you for your attention to this matter. I appreciate your prompt response and cooperation.

Sincerely,

Jackie Sample

(773)719-0337

6. BREACH OF STANDARD OF CARE

Defendants deviated from accepted standards of care by:

a. Abruptly discontinuing established ADHD medication;

b. Failing to review prior medical records;

c. Failing to confirm diagnosis before altering treatment;

d. Recommending antipsychotic medications without adequate clinical justification;

e. Ignoring patient-reported history and functioning;

f. Denying reasonable alternatives, including blood-pressure recheck and PCP clearance;

g. Instructing Plaintiff not to seek independent medical evaluation;

h. Failing to provide a safe medication transition plan.

## 7. DAMAGES

As a direct and proximate result of Defendants' actions, Plaintiff suffered:

a. Loss of access to necessary ADHD medication;

b. Impaired executive functioning;

c. Worsening medical condition;

d. Emotional distress;

e. Increased health risks;

f. Interference with ability to manage legal and personal affairs.

## 8. HIPAA AND RECORD ACCESS ISSUES

Plaintiff invoked rights under 45 C.F.R. § 164.524 regarding access to records.

Plaintiff alleges that Defendants failed to provide complete records as requested.

Plaintiff references HIPAA and HHS/OCR enforcement mechanisms as part of the factual background and record-access timeline, understanding that OCR enforces HIPAA complaints administratively.

## COUNT I – MEDICAL NEGLIGENCE

30. Dr. Hasabou acted outside the standard of care:

31. Dr. Hasabou suggested a return visit in two weeks without close follow-up for the "dangerously high blood pressure."

32. Dr. Hasabou actively discouraged me from obtaining a second blood pressure reading, although she stated that I had "dangerously high blood pressure."

33. Failure to obtain a second blood pressure reading, although she stated that I had "dangerously high blood pressure."

34. The doctor knowingly discontinued Vyvanse medication despite acknowledging being "at risk for total functional failure."

35. Failure to perform an EKG, which is within the standard of care, before recommending antipsychotic medication in a patient with a known cardiovascular condition, although she stated that I had "dangerously high blood pressure."

36. Failure to provide a referral to cardiology for an EKG. In fact, I suggested that I go to my primary care physician, and she stated, "No, don't do that," although she stated that I had "dangerously high blood pressure."

37. Failure to provide or document complete vital signs.

38. Failure to provide accurate Coding and billing diagnosis which is inconsistent with the documented diagnosis.

39. Failure to review previous records within Metropolitan Family Services, which show treatment of ADHD with Vyvanse.

40. Failure to review the Illinois Prescription Monitoring Program to confirm the longstanding history of treatment of ADHD with Vyvanse and Adderall.

41. Dr. Hasabou's disregard for my overall health and reckless actions show a high probability of deliberate lack of care, particularly in light of her repeated acknowledgment that I had "dangerously high blood pressure.

42. Plaintiff realleges paragraphs 1 through 29.

43. Defendants owed Plaintiff a duty to exercise the degree of knowledge, skill, care, and learning ordinarily possessed and exercised by reasonably careful health-care providers in the same or similar circumstances.

44. Defendants breached that duty by, among other things

45. Abruptly discontinuing established ADHD treatment;

b. Failing to obtain, review, or reconcile prior records before changing treatment materially;

c. Recommending antipsychotic medication despite Plaintiff's reported history and stated concerns;

d. Refusing reasonable alternatives such as immediate PCP clearance or prompt blood-pressure reevaluation;

e. Failing to provide a safe transition plan.

f. As a direct and proximate result of those breaches, Plaintiff suffered the injuries and damages described above.

COUNT II – LACK OF INFORMED CONSENT

(Against Dr. Hasabou)

46. Plaintiff realleges paragraphs 1 through 33.

47. Before materially changing Plaintiff's psychiatric medication regimen, Defendant Hasabou had a duty to disclose material information that a reasonable patient would need to make an informed decision, including material risks, benefits, alternatives, and the consequences of abrupt discontinuation.

48. Plaintiff alleges that Defendant Hasabou failed to provide adequate disclosure of:

49. a. The risks of abruptly stopping established stimulant treatment

50. b. The reasons for selecting antipsychotic medications;

51. c. Reasonable alternatives, including obtaining prior records, PCP or cardiology clearance, and short-interval follow-up;

52. d. The practical consequences of withholding Plaintiff's established medication while Plaintiff was already out of medication.

53. A reasonable person in Plaintiff's position would have declined or deferred the proposed course without further evaluation and record review had adequate disclosures been made.

54. Plaintiff was injured as a direct and proximate result.

COUNT III – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(Against All Defendants)

55. Plaintiff realleges paragraphs 1 through 38.

56. Defendants knew or should have known that abruptly disrupting established psychiatric medication, characterizing Plaintiff's reported experiences as delusional without adequate longitudinal review, and denying reasonable alternatives could foreseeably cause severe emotional distress.

57. Defendants' conduct caused Plaintiff emotional distress, anxiety, fear, humiliation, and worsening stress-related symptoms.

58. Plaintiff suffered damages as a direct and proximate result.

COUNT IV – CORPORATE NEGLIGENCE

(Against Metropolitan Family Services)

59. Plaintiff realleges paragraphs 1 through 42.

60. Metropolitan Family Services owed Plaintiff independent duties to use reasonable care in credentialing, supervising, training, reviewing, and retaining providers, and in maintaining appropriate systems for records access, continuity of care, and patient safety.

61. Metropolitan Family Services breached those duties by, among other things:

62. a. Failing to ensure adequate review of prior records and ongoing treatment history;

63. b. Failing to maintain and produce complete medical records upon request;

64. c. Failing to supervise and review treatment decisions that materially altered established psychiatric care;

65. d. Failing to protect continuity of care and patient autonomy.

66. Plaintiff was injured as a direct and proximate result of those breaches.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants, and award:

A. Compensatory damages;

B. Medical damages;

C. Damages for emotional distress;

D. Costs of litigation;

E. Such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Executed on this __ day of _____, 2026.

Jackie Sample

Jackshousinganddevelopment@gmail.com

(773)719-0337